508 A.2d 148

COMPTROLLER OF the TREASURY

v.

WORLD BOOK CHILDCRAFT INTERNATIONAL, INC.

No. 951, Sept. Term, 1985.

Court of Special Appeals of Maryland.

May 9, 1986.

**426**

John K. Barry, Asst. Atty. Gen., Annapolis (Stephen H. Sachs, Atty. Gen., Baltimore, and Gerald Langbaum, Asst. Atty. Gen., Annapolis, on brief), for appellant.

Harry D. Shapiro (Neil C. Kahn and Venable and Howard, on brief), Baltimore, for appellee.

Argued before ALPERT, BLOOM and ROBERT M. BELL, JJ.

ALPERT, Judge.

For the first time, in a corporate income tax case, we are asked to decide which party bears the burden of establishing the tolling of the statute of limitations.

This is an appeal by the Comptroller of the Treasury, Income Tax Division, from a judgment of the Circuit Court for Baltimore City affirming a decision of the Maryland Tax Court. The tax court reversed an assessment for Maryland corporate income tax, originally entered on April 16, 1979, in the amount of $512,040 for the taxable years ending 9/30/39 through 9/30/77, against the appellee, World Book Childcraft International, Inc.

Appellant contends the circuit court erred in affirming the tax court's decisions that:

1. the Comptroller bore the burden of demonstrating the applicability of an exception to the bar of the statute of limitations on assessments for the fiscal years in question, and

2. the Comptroller failed to meet its burden of establishing that appellee had a duty to file Maryland corporate income tax returns for the years at issue.

For reasons explained herein, we shall address these issues in inverse order, and shall affirm.

## BACKGROUND

On April 16, 1979, an assessment alleging taxes due for the years 1939–1977 was entered against appellee, World Book Childcraft International, Inc., based upon figures supplied to Manfred Oppenheim, a corporate auditor for the appellant Comptroller, by appellee's "director of domestic taxes" from its national headquarters in Chicago, Illinois. World Book had never filed Maryland income tax returns during any of the years at issue. World Book was incorporated under the name of Field Enterprises Educational Corporation on March 13, 1957. Even though there was no evidence of any pre-existing entity prior to 1957, the Comptroller chose the year 1939 as the starting date for the delinquency in that that was the year Maryland's corporate income tax law was enacted.

Proceedings were initiated in the Maryland Tax Court on May 16, 1984. Before the hearing in the tax court, World Book moved, pursuant to Md.Ann.Code Art. 81 § 309(b),[1] to shift the burden of proof to the Comptroller to show that the taxes, penalties and interest assessed against them for the years ending September 30, 1939, through September 30, 1975, were not barred by the statute of limitations.[2] The motion was granted on October 22, 1981.

At the hearing, the appellant conceded that there was no proof of tax liability for the years 1939–1956 before appellee or its predecessor corporation, Field Enterprises Educational Corporation, existed. As to the years 1957–1975 the tax court found that the Comptroller had failed to sustain its burden of proof that World Book's activities in Maryland produced income which was subject to corporate taxation. As to the years 1976–1977 (not barred by limita-

---

**1.** "Except as otherwise provided in this section, the amount of any tax imposed by this subtitle shall be assessed within 3 years after the return was filed or within 3 years after the due date for such return, whichever date is later."

**2.** It is conceded that the assessment for the years 1976–1977 was not barred by limitations.

tions), the tax court held that appellee did not owe any taxes because of a net operating loss in 1976 which should have been carried forward to erase the liability for 1977 as well.

On June 5, 1984, the Comptroller appealed the tax court's decision to the Circuit Court for Baltimore City. That court, with Judge Elsbeth Bothe presiding, in a memorandum opinion dated June 19, 1985, affirmed the decision of the tax court reversing the Comptroller's assessment. Specifically, the court held that the tax court correctly placed upon the Comptroller the burden of proof to show that appellee World Book had a duty to file Maryland corporate income tax returns and pay Maryland income tax for the fiscal years 1939 through 1975. The court further held that the appellant had not sustained its burden.

Appellant brings this appeal contesting the propriety of the allocation of the burden and the finding that that burden was not sustained.

## THE ISSUES

The first issue raised by appellant is whether the tax court was correct in ruling that it bore the burden of showing that the assessments for the years 1939–1975 were not barred by the statute of limitations. Appellant insists that World Book, by pleading limitations as a defense to the assessment, had the burden of proving that it was entitled to this affirmative defense.

Md.Ann.Code Art. 81 § 309(b) (1980 Repl.Vol.) provides that the limitations period for assessments does not begin to run until either "3 years after the return was filed or within 3 years after the due date for such return, whichever date is later." Under this section, the Comptroller's assessment, made in 1979, would have been barred by limitations for all but the years 1976–1977, unless an exception to the running of the statute could be proven.

Art. 81 § 309(c)(2) provides the only exception which would be applicable to the case at hand:

In the case of a *failure to file* a return or in the case of the filing of an incomplete return, the tax may be assessed at any time.

(Emphasis added).

Before we address the question as to the proper allocation of the burden of proving an exception to the statute of limitations, we must determine whether "there was any failure to file" against which the statute even began to run; that is, whether appellant demonstrated that appellee was required to file returns for the years in question.

I. *Sustention Of The Burden*

A. *Failure to file/duty to file*

As the circuit court noted, there can be no "failure to file" unless there is first a *"duty* to file" and a neglect thereof.

Whether a duty to file a return exists is determined by two statutes. The Maryland statute is Article 81, Section 316(c) (now codified as § 316) which provides:

The remaining net income, hereinafter referred to as business income, shall be allocated to this State if the trade or business of the corporation is carried on wholly within this State, but if the trade or business of the corporation is carried on partly within and partly without this State so much of the business income of the corporation as is derived from or reasonably attributable to the trade or business of the corporation carried on within this State, shall be allocated to this State and any balance of the business income shall be allocated outside this State. The portion of the business income derived from or reasonably attributable to the trade or business carried on within this State may be determined by separate accounting where practicable, but never in the case of a unitary business; however, where separate accounting is neither allowable nor practicable the portion of the business income of the corporation allowable to this State shall be determined in accordance with a three-factor formula of

property, payroll and sales, in which each factor shall be given equal weight and in which the property factor shall include rented as well as owned property and tangible personal property having a permanent situs within this State and used in the trade or business shall be included as well as real property. The Comptroller of the Treasury shall have the right, in those cases where circumstances warrant, to alter any of the above rules as to the use of the separate accounting method or the formula method, the weight to be given the various factors in the formula, the manner of valuation of rented property included in the property factor and the determination of the extent to which tangible personal property is permanently located within the State.

Restricting the right of states to impose such taxes is 15 U.S.C. § 381 et seq. (1976), which prohibits a state from imposing taxes on net income derived in the state from interstate commerce unless the business activities of the corporation within the state meet certain minimum standards. The federal statute provides, in pertinent part:

*Imposition of net income tax*

*Minimum standards*

(a) No State, or political subdivision thereof, shall have power to impose, for any taxable year ending after September 14, 1959, a net income tax on the income derived within such State by any person from interstate commerce if the only business activities within such State by or behalf of such person during such taxable year are either, or both, of the following:

(1) the solicitation of orders by such person, or his representative, in such State for sales of tangible personal property, which orders are sent outside the State for approval or rejection, and, if approved, are filled by shipment or delivery from a point outside the State; and

(2) the solicitation of orders by such person, or his representative, in such State in the name of or for the benefit of a prospective customer of such person, if orders by such customer to such person to enable such customer to fill orders resulting from such solicitation are orders described in paragraph (1).

The tax court held that, based on the evidence before it, appellee World Book's business activities within the state were not enough to establish a sufficient nexus to create an obligation on appellee to file state corporate income tax returns. The circuit court agreed.

Appellant now contends that the tax court erred in its holding that 15 U.S.C. § 381 operated so as to exempt appellee from the tax liability otherwise incurred under Art. 81 § 316. Specifically, appellant contends that the evidence of appellee's activities demonstrated that such activity went beyond the mere "solicitation of sales" granted immunity under 15 U.S.C. § 381.

The Comptroller's evidence consisted primarily of the testimony of its auditor, Manfred Oppenheim who, in 1977, after happening upon a listing for World Book,[3] Inc. in the Baltimore and Suburban Maryland yellow pages, initiated an investigation of appellee's affairs. Oppenheim's testimony was based in turn on information supplied by William Coffey, World Book's director of domestic taxes, in response to the Comptroller's inquiries about the nature of World Book's operations.

World Book purportedly admitted in correspondence and conversation with Oppenheim that it maintained three "branch managers" in Maryland and that an office was located in Towson where World Book was guarantor on the lease. World Book, however, maintained that the branch managers were independent contractors who worked for

---

**3.** After verifying that World Book had not filed a corporate income tax return from 1939 to 1976, Oppenheim discovered that Field Enterprises Education Corporation, appellee's predecessor corporation, was listed with a Baltimore address in 1963 and years subsequent.

their own accounts and were paid on a commission basis. These individuals, appellee explained, merely solicited orders in Maryland which were accepted and filled from World Book's home office in Chicago and shipped directly to Maryland customers from binderies in Indiana and Tennessee. According to Mr. Oppenheim's testimony, Coffey told him that the independent contractor/solicitors were subject to federal tax withholding and were covered by Maryland unemployment compensation. Yet, no W2 forms or Maryland unemployment returns were produced by the Comptroller to prove this assertion.

In further support of the contention that the branch managers were employees over whom World Book exercised total control, the Comptroller produced copies of form agreements supplied by Mr. Coffey as examples of the contracts between the corporation and persons listed as branch managers and division managers. These agreements, printed in October 1974, were unsigned and undated; no signed agreement between appellee and a "solicitor" were ever produced by appellant; further, appellant was unable to represent whether there were any persons presently conducting business for World Book under such an agreement.

Appellant claimed that World Book owned property and maintained an office in Maryland, relying on a representation by Coffey that World Book owned a small amount of furniture in a Maryland office. That office, located in Towson, was leased by K.M.I. (landlord) to Maurice and Lorraine Rosen (tenants), who agreed to the payment of rent, upkeep and anti-subletting clauses inserted in the agreement.[4] The lease, dated August 28, 1968, and for the term of October 1, 1968 to September 30, 1971, was guaran-

---

4. The clause provided that:
 Field Enterprises Educational Corporation hereby guarantees prompt payment of rent under the foregoing lease between K.M.I. Corporation, as landlord, and Maurice and Lorraine Rosen, as tenants.

teed by Field Enterprises Educational Corporation, World Book's predecessor corporation. A copy of the lease was introduced into evidence; however, no evidence as to the use of the premises, the identity of Maurice and Lorraine Rosen, or their relationship with World Book, was offered.

Appellant contends that the above evidence was sufficient to show that the appellee's activities constituted more than mere solicitation; specifically, that appellee maintained an office and owned furniture in the state through individuals properly classified as "employees."

■ Maintenance of an office or property in a state (by a foreign corporation) does not give rise to a duty to file *if* that activity is conducted by independent contractors. 15 U.S.C. § 381(c) sets forth the rule in this regard:

*Sales or solicitation of orders for sales by independent contractors*

(c) For purposes of subsection (a) of this section, a person shall not be considered to have engaged in business activities within a State during any taxable year merely by reason of sales in such State, or the solicitation of orders for sales in such State, of tangible personal property on behalf of such person by one or more independent contractors, or by reason of the maintenance, of an office in such State by one or more independent contractors whose activities on behalf of such person in such State consist solely of making sales, or soliciting orders for sales, of tangible personal property.

An independent contractor is defined as follows:
381(d) For purposes of this section—

(1) the term "independent contractor" means a commission agent, broker, or other independent contractor who is engaged in selling, or soliciting orders for the sale of, tangible personal property for more than one principal and who holds himself out as such in the regular course of his business activities; and

(2) the term "representative" does not include an independent contractor.

Appellant challenges the tax court's classification of the appellee's branch managers as "independent contractors" on two grounds: first, these "independent contractors" were allegedly subject to federal tax withholding; and secondly, these "independent contractors" were not shown to have worked for more than one principal, as required by § 381(d).

The tax court deemed the evidence before it insufficient to prove that appellee had any "employees" within the state for purposes of tax liability. Specifically, it said:

> Due to the lack of affirmative evidence that Petitioner's activity in Maryland went beyond the solicitation of sales, we find that the Comptroller failed to carry its burden of proving that Petitioner had a duty to file income tax returns for its tax years ending 9/30/56 through 9/30/75.

The circuit court affirmed, noting that the "flimsy evidence presented" did not support a finding that appellee did any more in Maryland than solicit sales through independent contractors, thus concluding that appellee had no duty to file a return. Further, the court noted, the act of guaranteeing a lease to an office in which a small amount of property (furnishings) was kept, and which was occupied by tenants not shown to have any relationship with appellee did not constitute the maintenance of a branch office within the state, *cf. Jantzen Inc. v. District of Columbia,* 395 A.2d 29 (D.C.1978) (per curiam), or the maintenance of property within the state, *cf. Olympia Brewing Co. v. Department of Revenue,* 266 Or. 309, 511 P.2d 837 (1973) (per curiam), *cert. denied,* 415 U.S. 976, 94 S.Ct. 1561, 39 L.Ed.2d 872 (1974), so as to generate tax liability.

### B. *Standard of review of tax court's findings*

In our review of the above findings of the tax court, we are constrained by the dictates of Md.Ann.Code

Art. 81 § 229(*o*) (1985 Cum.Supp.) which sets forth the proper standard of review:

*Decision of circuit court.*—In any case, the circuit court for the county shall determine the matter upon the record made in the Maryland Tax Court. The circuit court shall affirm the Tax Court order if it is not erroneous as a matter of law and if it is supported by substantial evidence appearing in the record. In other cases, the circuit court may affirm, reverse, remand, or modify the order appealed from.

Under this standard, there is unlimited review where the question is one of law, but very limited review when the tax court's factual conclusions are in question. *Ramsay, Scarlett & Co. v. Comptroller,* 302 Md. 825, 834, 490 A.2d 1296 (1985); *Supervisor v. St. Leonard Shores Joint Venture,* 61 Md.App. 204, 212–13, 486 A.2d 206, *cert. granted,* 303 Md. 115, 492 A.2d 616 (1985). In the absence of errors of law, the tax court must be affirmed if a "reasoning mind reasonably could have reached the factual conclusion[s]." *Comptroller v. Diebold, Inc.,* 279 Md. 401, 407, 369 A.2d 77 (1977). *See also Ramsay,* 302 Md. at 834, 490 A.2d 298; *Comptroller v. Haskin,* 298 Md. 681, 693, 472 A.2d 70 (1984); *Supervisor v. St. Leonard Shores Joint Venture,* 61 Md.App. at 212–13, 486 A.2d 206. This standard is equally applicable to review by an appellate court. As the court in *Ramsay* stated:

With the case in this posture, we [caution] that a reviewing court may not substitute its judgment for the expertise of the agency; that we must review the agency's decision in the light most favorable to it; that the agency's decision is prima facie correct and presumed valid; and that it is the agency's province to resolve conflicting evidence and where inconsistent inferences can be drawn from the same evidence it is for the agency to draw the inferences.

302 Md. at 834–35, 490 A.2d 298 (citations omitted).

We must resolve the discord between the parties as to the proper standard of review of the tax court's findings that

the Comptroller had not sustained the burden of proving that World Book had a duty to file a return for the years in question.

The circuit court implicitly considered the question as one of fact, applying the *Ramsay, Scarlett* standard of review. The court stated:

> A reasoning mind could not, on the basis of the flimsy evidence presented by the Comptroller, have rationally been able to determine that World Book's activities in Maryland went beyond the solicitation of sales by independent contractors.

Appellant contends, however, that the conclusion reached by the tax court, that appellee had not duty to file, was a result of an erroneous interpretation of § 381. Specifically, appellant argues that the tax court, in failing to make a finding as to particular elements set out in the statute, must have ignored those facts as irrelevant to a § 381 determination.[5] Having so decided, appellant continues, the tax court reached a legally erroneous interpretation of the statute which we should overturn as "erroneous as a matter of law." Md.Code Ann.Art. 81 § 229(*o*).

In order to consider properly these countervailing arguments, we pause to set forth what we perceive to be a threefold analysis mandated by *Ramsay, Scarlett:*

■ 1. First, the reviewing court must determine whether the agency recognized and applied the correct principles of law governing the case. The reviewing court is not constrained to affirm the agency where its order "is premised solely upon an erroneous conclusion of law." 302 Md. at 834, 490 A.2d 1296.

■ 2. Once it is determined that the agency did not err in its determination or interpretation of the applicable law, the reviewing court next examines the agency's factual

---

5. Appellant in its brief concedes that it "could not succeed on this appeal if the tax court found as a fact that there were no employees, or if there was no rent guarantee, or no property in Maryland."

findings to determine if they are supported by substantial evidence, *i.e.*, by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* At this juncture, the *Ramsay, Scarlett* court reminds us that "it is the agency's province to resolve conflicting evidence, and, where inconsistent inferences can be drawn from the same evidence, it is for the agency to draw the inference. *Id.* at 835, 490 A.2d 1296.

■ 3. Finally, the reviewing court must examine how the agency applied the law to the facts. This, of course, is a judgmental process involving a mixed question of law and fact, and great deference must be accorded to the agency. The test of appellate review of this function is "whether, ... a reasoning mind could reasonably have reached the conclusion reached by the [agency], consistent with a proper application of the [controlling legal principles]." *Id.* at 838, 490 A.2d 1296.

■ We reject the Comptroller's position, for it is abundantly clear that the tax court did not err as a matter of law in determining which statutes, and cases interpreting those statutes, governed.

Secondly, we defer to the "pure" factfinding of the tax court and, in deference to that body, agree that the Comptroller failed to produce sufficient evidence that World Book's activities in Maryland went beyond mere solicitation of orders through independent contractors.

■ As to the most critical question before the tax court, *i.e.*, World Book's duty to file, we believe that it is not a question of law but is more a mixed question of law and fact. The difficulties attendant to the evaluation of the mixed question of law and fact has been both recognized by scholars and embraced in Maryland case law. Professor Schwartz, in his treatise entitled *Administrative Law* (1976), stated at pp. 642–43 (footnotes omitted):

The two terms, a state judge tells us, are not amenable to precise definition. As Justice Wilson put it in 1790, "in

many cases, the question of law is intimately and inseparably blended with the question of fact; and when this is the case, the decision of one necessarily involves the decision of the other." The judges who have the last word may confidently draw the line; for others it is not so easy. The extent of review depends upon which side of the law-fact line the given finding is seen to fall. Yet there may be difficulty in concrete cases in determining on which side of the line a particular finding does fall. The law-fact distinction "is often not an illuminating test and is never self-executing."

"Law" and "fact" are not two mutually exclusive kinds of question, so that the scope of review becomes a mere mechanical matter depending on the category in which the finding at issue falls. The reviewing court itself has the final word on whether the particular finding is one of law or fact. In deciding that question, it determines whether review is to be broad or narrow. "The knife of policy alone effects an artificial cleavage at the point where the court chooses to draw the line between public interest and private right."

*See also* 2 Am.Jur.2d *Administrative Law* § 669 (1962); 4 K. Davis, *Administrative Law Treatise* §§ 30.01–.03 (1958 & 1970 Supp.).

Likewise, our courts recognize that most decisions of an agency represent neither a singularly factual or legal determination; rather, they involve an application of the law to the facts or, as we said earlier, quoting from *Ramsay, Scarlett,* "... whether, in light of substantial evidence appearing on the record, a reasoning mind could reasonably have reached the conclusion reached by the Tax Court, consistent with a proper application of [pertinent legal principles] ...." 302 Md. at 838, 490 A.2d 1296.

■ When applying this test, we must not substitute our judgment for the expertise of the tax court. Also, we "must review the [tax court's] decision in the light most favorable to [it], since decisions of administrative agencies

are prima facie correct and carry with them the presumption of validity." *Baltimore Lutheran High School Ass'n v. Employment Security Administration,* 302 Md. 649, 662–63, 490 A.2d 701 (1985).

After reviewing the evidence presented by the Comptroller as to appellee's business activities in Maryland, it determined, based on its expertise in the area, that those activities did not rise above "mere solicitation" protected by 15 U.S.C. § 381. Accordingly, our review is governed by the test: "whether, in light of substantial evidence appearing in the record, a reasoning mind could reasonably have reached the conclusion reached by the Tax Court." *Ramsay,* 302 Md. at 838, 490 A.2d 1296.

 Deferring to the expertise of the tax court in making such judgments, we conclude that a reasoning mind could have determined that World Book's activities in Maryland fell within the protection of the federal statute, and that, consequently, World Book had no duty to file a return. The determination of whether sufficient evidence had been produced to support the appellant's claim that the appellee's branch managers were covered by Maryland unemployment compensation and subject to federal tax withholding (and were thus *not* independent contractors) was a matter properly committed to the province of the tax court. We similarly view the determination that appellee's branch managers were independent contractors, because of the absence of a showing by appellant that they did not work for others in addition to World Book.[6]

---

6. While the cases interpreting § 381(d) unequivocally hold that an independent contractor is one who solicits sales for more than one principal, *see District of Columbia v. General Motors Corporation,* 336 F.2d 885, 893 n. 13 (D.C.Cir.1964), *rev'd on other grounds,* 380 U.S. 553, 85 S.Ct. 1156, 14 L.Ed.2d 68 (1965), appellant has ignored the fundamental proposition that the burden of proof as to this material element rests not on appellee to disprove, but on appellant to demonstrate affirmatively. *Shelton v. State,* 198 Md. 405, 84 A.2d 76 (1951). The tax court's decision evidences appellant's failure to do so.

For this court to come to a contrary conclusion would amount to our substituting our judgment for that of the tax court. We refuse to do so, for this would run contrary to the rule enunciated most recently in *Comptroller v. Washington National Arena Limited Partnership*, 66 Md.App. 416, 425, 504 A.2d 666 (1986):

A reviewing court should not substitute its judgment for the expertise of the administrative agency; the agency's decision must be reviewed in the light most favorable to it, and the inferences drawn by the agency from inconsistent evidence must be honored.

(Citations omitted).

II. *The Statute of Limitations*

It might appear that addressing the question of whether the tax court was correct in placing the burden of proving the "failure to file" on the Comptroller is unnecessary given our affirmance of the lower court's finding that the Comptroller had not sustained its burden of proving that World Book had a duty to file. We choose, however, to address it because, procedurally, it was critical to the progression of the case.

The Comptroller made the assessment against appellee on April 16, 1979, for the years 1939 through 1975. Under § 309(b), the assessment would have been barred by the general three year limitations period, unless it could be shown that, under § 309(c), appellee had "failed to file."

The tax court placed the burden of proving that World Book had a duty to file and had "failed to file" on the Comptroller. Such an action represented a departure from the normal placement of the burden in tax assessment cases. By statute,[7] the burden of challenging an assessment as erroneous rests on the taxpayer. Where, however,

---

7. Art. 81 § 309(d) places the burden on the taxpayer. It provides:
 The Comptroller shall mail a notice of any assessment to the taxpayer. In the event the taxpayer is dissatisfied with his assessment, he may within thirty days from the date of notice, appeal to the Maryland Tax Court. (1982, ch. 837).

the assessment is challenged on the basis of limitations, and is, on its face, barred by limitations, the burden is shifted to the Comptroller to demonstrate the applicability of an exception which allows the assessment to be maintained.

■ Were any other rule the case, as Judge Bothe astutely noted, the taxpayer would be faced with the "impossibility of proving a negative." To require a taxpayer to maintain at his disposal records refuting tax liability for years clearly in excess of the statutory period on the off-chance that the Comptroller might make an assessment for those years, is at best an impossibility and, at least, a burden too impractical and onerous to impose. It is with this in mind, and for the foregoing reasons, that we hold the tax court's placement of the burden on the Comptroller was proper.

### A. *The Federal Rule—a guideline*

Although there are no Maryland cases dealing with the allocation of the burden of proof to an exception to limitations in a tax case, we note that there is an abundance of federal authority which holds that the party seeking to invoke an exception to the statute of limitations has the burden of establishing the applicability of said exception. Indeed, the circuit court noted these cases in its memorandum opinion.[8]

Specifically, the court reviewed cases decided in the United States Tax Court and its predecessor, the Board of Tax Appeals, and found authority in support of the proposition

---

**8.** Noting that "Maryland income tax law is to be construed in a fashion conformable to the Internal Revenue Code to which it is inextricably [bound]," *Comptroller v. Diebold,* 279 Md. 401, 409, 369 A.2d 77 (1977); *see* Md.Code Ann.Art. 81 § 304(a), the circuit court compared the federal and Maryland statutes of limitations on assessments which are, in all material respects, alike. 26 U.S.C. § 6501(a) of the Internal Revenue Code of 1954 provides for a 3 year limitations period; § 6501(c)(3) provides that a tax "may be assessed ... at any time" in the case of a "failure to file." *Accord* Md.Ann.Code Art. 81 § 309(c)(2).

that appellant bore the burden of proving appellee "failed to file." *See Farmer Seed Co. v. Commissioner*, 10 BTA 1069 (1928) (where statute of limitations expired, burden properly placed on Commissioner: assessed party should not bear burden of proving a negative), and *Bonwit Teller & Co. v. Commissioner*, 37 TCM 941, 942 (1979), which held that "where the Commissioner is relying on an exception to the general rule he bears the burden of pleading and proving that the exception is applicable." *See also Fiore v. Commissioner*, 39 TCM 66 (1979) and *Gray v. Commissioner*, 11 TCM 1213, 1216 (1952), for the proposition that "where statute of limitations is pleaded by the petitioner ... it is the respondent's burden to allege affirmatively the exception he relies on."

B. *The Maryland law—a rubric*

■■■ While the federal law is instructive on this point, we are able to glean from Maryland cases a rationale that we consider entirely applicable to the case at hand. The rule may be stated simply: a party relying on a matter in avoidance of the statute of limitations defense bears the burden of proving such a matter where it is shown that the cause of action accrued earlier than permitted by applicable statute.

In applying this rule to common law fraud or breach of contract actions, and in civil actions generally, *Finch v. Hughes Aircraft Co.*, 57 Md.App. 190, 241, 469 A.2d 867 (1984), *cert. denied,* —— U.S. ——, 105 S.C. 1190, 84 L.Ed.2d 336, *reh'g denied,* —— U.S. ——, 105 S.Ct. 2043, 85 L.Ed.2d 341 (1985), we have held that the "burden is on [the plaintiffs] to prove that they did not discover the alleged wrong" until after the limitations period had expired. *Id.* The underlying policy has been stated as follows: In equity, it is an established rule that a party who seeks to avoid the consequences of an apparently unreasonable delay in the assertion of his rights on the ground of ignorance must definitely allege and prove when and how his knowledge of the fraud was obtained, so that the court will be able to

determine whether he exercised reasonable diligence to ascertain the facts. *Id.* at 242, 469 A.2d 864. *See also Piper v. Jenkins,* 207 Md. 308, 318, 113 A.2d 919 (1955); *Lutheran Hospital v. Levy,* 60 Md.App. 227, 241, 482 A.2d 23 (1984).

 We see no reason why the above principal is not equally controlling in a tax case. As the party attempting to prove that the limitations period on assessments would have expired but for the applicability of a particular exception, the Comptroller here bears the burden of demonstrating the applicability of that exception to the instant case and proving the same "with specificity," *Lutheran Hospital v. Levy,* 60 Md.App. at 241, 482 A.2d 23. Thus, it was proper for the tax court to place the burden of proving that appellee World Book had "failed to file" a tax return upon the Comptroller, whose cause of action for the years 1939–1975, but for the applicability of the exception, would have been barred by limitations. The decision of the tax court in placing the burden of proving an exception to limitations was not erroneous as a matter of law, and therefore, we shall affirm the order of the tax court reversing the assessment against the appellee.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.