514 A.2d 496

**COMPTROLLER OF the TREASURY**

v.

**Homer C. HOUSE.**

**No. 1522, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Sept. 8, 1986.

---

Gerald Langbaum, Asst. Atty. Gen., Annapolis (Stephen H. Sachs, Atty. Gen., Baltimore, and John K. Barry, Asst. Atty. Gen., Annapolis, on brief), for appellant.

Nathan Braverman (Marvin J. Garbis and Melnicove, Kaufman, Weiner, Smouse & Garbis, on brief), Baltimore, for appellee.

Before WEANT and BISHOP, JJ., and GETTY, JAMES S., Retired (specially assigned), J.

WEANT, Judge.

The Circuit Court for Baltimore City has reversed an order of the Maryland Tax Court affirming a tax assessment entered by the Comptroller of the Treasury, Income

Tax Division (appellant) against Homer C. House, M.D. (appellee). This appeal presents three questions for our consideration.

I.  Did the .Circuit Court err, as a matter of law, in concluding that Dr. House was not an officer of PASI?

II.  Did the Circuit Court apply an erroneous standard of review by substituting its judgment for that of the Tax Court on the factual question of whether or not Dr. House exercised direct control over the fiscal management of PASI?

III.  Even if the Circuit Court did not apply the wrong standard of judicial review, did the Circuit Court err in. concluding that Dr. House did not exercise direct control over the fiscal management of PASI?

For the reasons set out below, we shall here reverse the circuit court's judgment.

## Background

The tax assessment at issue in the case at bar was entered by the Comptroller against appellee pursuant to Md. Code Ann. art. 81, § 312(h)(4), which at all times relevant hereto provided as follows:

> Any employer who negligently shall fail either to withhold the required tax or to pay it to the Comptroller as specified, or both, shall be held personally and individually liable for all moneys so involved, and if the employer is a corporate entity, the personal liability shall extend and be applicable to (1) any officer of the corporation who exercises direct control over the fiscal management of the corporation and (2) any agent of the corporation who, in his capacity as such, is under a duty to withhold the tax and transmit to the Comptroller. Any sum or sums withheld in accordance with the provisions of this section shall be deemed to be held by the employer in trust for the State of Maryland and by such employer recorded in a ledger account so as clearly to indicate the amount of tax

withheld and that such amount is the property of the State of Maryland.

More particularly, the assessment was predicated upon the Comptroller's claim that appellee, as an officer of Physicians Management Services, Inc. ("PASI") who exercised direct control over the fiscal management of PASI, was personally liable for PASI's failure to remit to the Comptroller withholding taxes due under art. 81, § 312.

Appellee challenged the assessment in the Maryland Tax Court. The evidence before that court reveals, *inter alia,* that appellee was a majority shareholder of PASI[1] and one of PASI's three directors. Although appellee did not hold any of the executive offices specified in PASI's original bylaws, *i.e.,* president, vice president, secretary, and treasurer, those bylaws do provide for "such other officers as the stockholders may from time to time consider necessary for the proper conduct of the business of the Corporation."[2] Appellee held the position of Chairman of the Board.

Other evidence submitted for the tax court's consideration shows that appellee was listed as "Owner or Responsible Officer" on PASI's Maryland Employer Withholding Application dated 23 November 1977, and that appellee signed various authorizations for corporate bank accounts, which specified that he was an "officer" authorized to withdraw funds.

Appellee's own testimony before the tax court reveals the following. PASI was incorporated in 1977 to assist physicians in managing their practices. Appellee never intended to involve himself in the business operations of PASI;

---

1. Originally, 90% of PASI's stock was placed in the names of Dr. House's children. Minutes of a joint directors and shareholders' meeting in November of 1979 suggest that at that time Dr. and Mrs. House were acting as co-trustees of their children's shares. Apparently, the stock was eventually placed in Dr. House's name for tax purposes.

2. In November of 1979, the bylaws were amended to create the office of vice president of real estate operations.

instead, it was anticipated that George Burck,[3] president of PASI, would handle those operations. Nonetheless, on several occasions appellee told Mr. Burck about business opportunities that might be available to PASI, *e.g.*, management of a building owned by Pine Heights Joint Venture and the billing for the emergency room at° St. Agnes Hospital. Although Burck was "on his own" with respect to client contracts, appellee told Burck, in reference to a contract between PASI and North Arundel Hospital, "there's no way you are going to be able to renew that contract and keep this corporation running."

Regarding salary decisions with respect to rank and file employees, such were Burck's responsibility. Appellee did, however, tell Burck to fire a computer programmer. He also involved himself in the acquisition of PASI's computer. Not only did appellee look at the particular computer before it was obtained and sign the necessary acquisition papers, his testimony suggests that the idea of a computer was his, *e.g.*, "I pointed out to George that several of the orthopedic practices that had invited [sic] to look at them had computers." The computer in turn, which had a purchase price of $66,000, was the guts of PASI's billing services.

Appellee's testimony reveals that PASI suffered continuous financial problems. In this regard, appellee was required to make a number of loans to support the company, *e.g.*, loans to meet the payroll and loans to develop software for the computer; appellee indicated that several loans were "exorbitant." Then, when it finally became obvious to appellee that Burck could not balance the checkbook, appellee asked his wife "to come in and insure that checks were not written unless there was money in the bank to cover them." Eventually Burck was not allowed to sign any checks without Mrs. House's co-signature.

---

**3.** Mr. Burck was also assessed under art. 81, § 312(h)(4). That assessment was challenged unsuccessfully at the tax court and circuit court levels.

According to appellee, he kept himself apprised of PASI's financial status by attending annual meetings, which were held at his house, and occasional meetings with Burck. He testified that he had no "hard core knowledge" of any withholding tax problems prior to the summer of 1981. Then, when his surgical practice partner complained about PASI's treatment of moneys paid by the practice to PASI for withholding taxes, appellee called a meeting with his accountant and Burck. At that meeting appellee was told that PASI might owe as much as $90,000. Appellee also testified that prior to 1981 Burck never told him that the withholding taxes were not being paid. In this regard he said: "He might say that something was late. And occasionally I would ... money would come ... you know, a request for money would come to pay tax. And I remember clearly saying there's no sense in paying these things late, because you pay a fine. And that's money right down the drain." [4]

At the close of the hearing before the tax court, that agency concluded that appellee exercised direct control over the fiscal management of PASI. The tax court, however, reserved its decision regarding appellee's status as an officer in order to allow counsel to file briefs on the issue. The court eventually issued its Memorandum and Opinion in which it stated as follows: "After considering the facts of this case and the law cited in the briefs filed by the parties, we find that the Petitioner, Doctor Homer C. House, was an 'officer' which the Legislature intended to impose liability on under Article 81, Section 312(h)(4)(1)."

### Standard of Review

This Court's recent decisions of *Cardellino v. Comptroller*, 68 Md.App. 332, 511 A.2d 573 (1986); *Matthew Bender*

---

**4.** The accountant's testimony refutes that of appellee; the accountant testified that appellee said "let me pay these other bills right now. I'd rather, you know, let me pay the penalties with the withholding tax later, but I've got to get these bills off my neck."

*& Co. v. Comptroller*, 67 Md.App. 693, 509 A.2d 702 (1986); and *Comptroller v. World Book Childcraft International, Inc.*, 67 Md.App. 424, 508 A.2d 148 (1986), enunciate "what we consider the proper three-fold analysis," *Matthew Bender*, 67 Md.App. at 705, 509 A.2d at 708, that applies to appellate review of a tax court's decision. That analysis, derived from *Ramsay, Scarlett & Co. v. Comptroller*, 302 Md. 825, 490 A.2d 1296 (1985), is as follows:

1. First, the reviewing court must determine whether the agency recognized and applied the correct principles of law governing the case. The reviewing court is not constrained to affirm the agency where its order "is premised solely upon an erroneous conclusion of law." 302 Md. at 834, 490 A.2d 1296.

2. Once it is determined that the agency did not err in its determination or interpretation of the applicable law, the reviewing court next examines the agency's factual findings to determine if they are supported by substantial evidence, *i.e.*, by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* At this juncture, the *Ramsay, Scarlett* court reminds us that "it is the agency's province to resolve conflicting evidence, and, where inconsistent inferences can be drawn from the same evidence, it is for the agency to draw the inference.["] *Id.* at 835, 490 A.2d 1296.

3. Finally, the reviewing court must examine how the agency applied the law to the facts. This, of course, is a judgmental process involving a mixed question of law and fact, and great deference must be accorded to the agency. The test of appellate review of this function is "whether, ... a reasoning mind could reasonably have reached the conclusion reached by the [agency], consistent with a proper application of the [controlling legal principles.]" *Id.* at 838, 490 A.2d 1296.

*World Book*, 67 Md.App. at 438–39, 508 A.2d at 155–56 (quoting *Ramsay, Scarlett* as indicated). Thus, "[i]n absence of errors of law, the tax court must be affirmed if a 'reasoning mind reasonably could have reached the factual

conclusion[s].' " *Cardellino,* at 575 (quoting *Comptroller v. Diebold, Inc.,* 279 Md. 401, 407, 369 A.2d 77, 81 (1977)).

## I.

### *Appellee's Status as a Corporate Officer*

In our view, the circuit court erred in reversing the tax court's determination that appellee was a corporate officer of PASI. That decision involved a mixed question of law and fact; therefore, "[t]he test of appellate review of this function is 'whether, . . . a reasoning mind could reasonably have reached the conclusion reached by the [agency], consistent with a proper application of the [controlling legal principles].' " *World Book,* 67 Md.App. at 439, 508 A.2d at 156 (quoting *Ramsay, Scarlett,* 302 Md. at 838, 490 A.2d 1296).

As indicated above, PASI's bylaws provided for "such other officers as the stockholders may from time to time consider necessary for the proper conduct of the business of the Corporation." When this evidence is considered together with (1) the evidence of appellee's use of the title of Chairman of the Board, which in turn entailed much more than merely assuming the task of presiding over meetings of the Board of Directors; (2) the evidence of appellee's signing authorizations stating that he was an officer of PASI; and (3) the evidence that appellee was specified as "Owner or Responsible Officer" on PASI's Maryland Employer Withholding Application, we believe that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *World Book,* 67 Md.App. at 439, 508 A.2d at 156 (citing *Ramsay, Scarlett,* 302 Md. at 834, 490 A.2d 1296), that appellee was a *de jure* or *de facto* officer of PASI. *Cf. Cardellino,* at 577 (quoting *Freestate Land Corp. v. Bostetter,* 292 Md. 570, 580, 440 A.2d 380, 385 (1982) (quoting H. Brune, *Maryland Corporation Law and Practice* § 231 (rev. ed. 1953))) (" ' "Though ordinarily a vote of shareholders or directors is necessary to elect or appoint officers, it has been held that

the appointment of an officer may be 'inferred.' Persons acting as officers are presumed to be such and rightfully in office in the absence of proof to the contrary." ' ").

Moreover, unlike the circuit court, we believe that the intent of art. 81, § 312(h)(4) would be contravened if the term "officer" were construed as not including one such as appellee. *Cf. Cardellino,* 577–578 (appellant held to be *de facto* or *de jure* officer and as such personally obligated to pay retail sales tax pursuant to art. 81, § 328).

## II. and III.
### *Appellee's Exercise of Direct Control Over Fiscal Management*

We regard the tax court's determination that appellee exercised direct control over the fiscal management of PASI as a mixed question of law and fact. Again, an appellate court looks to see " 'whether, ... a reasoning mind could reasonably have reached the conclusion reached by the [agency], consistent with the proper application of the [controlling legal principles].' " *World Book,* 67 Md.App. at 439, 508 A.2d at 156 (quoting *Ramsay, Scarlett,* 302 Md. at 838, 490 A.2d 1296).

In our view, the circuit court's construction of the term "direct control" as meaning day-to-day control is inordinately narrow and contravenes the intent of art. 81, § 312(h)(4). Where, as here, appellee (1) advised Burck regarding potential business opportunities, as well as potential business risks; (2) involved himself in the acquisition of a piece of equipment essential to PASI's business; and (3) played a significant role in attempting to extricate PASI from its financial problems, the tax court's decision that appellee exercised direct control over the fiscal management of PASI is consistent with the intention of art. 81, § 312(h)(4) and consistent with the facts before that agency.

JUDGMENT REVERSED. CASE REMANDED TO CIRCUIT COURT FOR BALTIMORE CITY FOR ENTRY OF JUDGMENT AFFIRMING TAX COURT DECISION.

COSTS TO BE PAID BY APPELLEE.