501 A.2d 92

**PHILLIPS HARBORPLACE, INC.**

v.

**STATE DEPARTMENT OF ASSESSMENTS AND TAXATION.**

**No. 289, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Dec. 9, 1985.

Sharon V. Burrell (Robert K. Briskin and Cable, McDaniel, Bowie & Bond on brief), Baltimore, for appellant.

Mary Jean Lopardo, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen. and Kaye Brooks Bushel, Asst. Atty. Gen. on brief), Baltimore, for appellee.

Argued before GILBERT, C.J., and WILNER, and ADKINS, JJ.

ADKINS, Judge.

Phillips Harborplace, appellant, operates a full menu seafood restaurant, cafeteria, raw bar, carry-out and market within Baltimore's Harborplace pavilion. The restaurant kitchen and preparation rooms also serve the other facilities. About 40 percent of what the appellant sells constitutes crab dishes, including crab imperial, crab cakes and crab thermidore.

For the tax year 1981, the State Department of Assessments and Taxation, appellee, assessed appellant's kitchen equipment as personal property. Appellant protested, arguing that its equipment qualifies for the manufacturing

equipment tax exemption found in the Maryland Annotated Code, Art. 81 § 9A(c)(1).[1]

The Tax Court found that appellant's kitchen equipment does not qualify for the exemption and the Circuit Court for Baltimore City (Noel, J.) upheld the decision. This appeal followed.

The issue before us concerns the interpretation of a statute.

The rules of statutory construction of such a statute—indeed, the rules to follow for the very statute, Code, Article 81 § 9, that we must interpret—were set forth in *Perdue, Inc. v. State Department of Assessments and Taxation,* 264 Md. 228, 286 A.2d 165 (1972):

It is fundamental that statutory tax exemptions are strictly construed in favor of the taxing authority and if any real doubt exists as to the propriety of an exemption that doubt *must* be resolved in favor of the State. In other words, 'to doubt an exemption is to deny it.' In addition the Legislature has explicitly stipulated in § 9 of Art. 81 that all exemptions are to be strictly construed. Furthermore, the State's taxing prerogative is never presumed to be relinquished and the abandonment of this power must be proved by the party asserting the exemption.

*Perdue,* 264 Md. at 232–33, 286 A.2d 165 [emphasis in original] [citations omitted].

---

**1.** Article 81 reads in pertinent part:

§ 9A. Personal property exemptions.

(a) Generally; exemptions strictly construed.—The following tangible personal property shall be exempt from assessment and from State, county and city ordinary taxation, except as otherwise stated herein, each and all of which exemptions shall be strictly construed.

\* \* \* \* \* \*

(c) Manufacturing equipment.—(1) The following property used in manufacturing: tools (including mechanical tools); implements, however operated; machinery; manufacturing apparatus or engines, whether or not in use; except where the property is declared to be taxable by this subsection.

■ One other preliminary consideration should be noted: namely, that the scope of our review is severely limited. Our standard to follow is whether a reasoning mind reasonably could have reached the factual conclusion which the Tax Court reached and the circuit court upheld. We must neither engage in fact finding nor substitute our judgment for that of the lower tribunals but must uphold their decisions if they are supported by substantial evidence. *See* Code, Article 81 § 229(*o* ), *Ramsay, Scarlett & Co. v. Comptroller,* 302 Md. 825, 834–35, 490 A.2d 1296 (1985), and *Comptroller of the Treasury v. Diebold, Inc.,* 279 Md. 401, 369 A.2d 77 (1977).[2]

Obviously, then, the appellant has a heavy burden to overcome if it is to prevail. Indeed, appellant's case collapses under the weight of that burden. Not only can a reasoning mind reach the Tax Court's conclusion, it would be hard pressed to do anything else.

For a product to be labeled as manufactured, it must go through "a substantial transformation in form and uses from its original state." *Perdue v. State Department of Assessments and Taxation, supra,* 264 Md. at 237, 286 A.2d 165. This seems a singularly inappropriate way to describe seafood dishes prepared by a high quality restaurant which prides itself on using fresh and natural ingredients.

Appellant, however, asserts that "anything that changes the state of food" is manufacturing equipment. The specific machinery that he argues should be included under this heading may be placed in three categories: a) machines that make ice, b) machines that clean, slice, mix, peel or other-

---

**2.** The scope of review is substantially broader if "an erroneous conclusion of law" is involved. *Ramsay, Scarlett,* 302 Md. at 834, 490 A.2d 1296; *Comptroller v. Shell Oil Co.,* 65 Md.App. 252, 259, 500 A.2d 315 (1985). Here we deal essentially with factual determinations. To the extent that statutory construction is implicated, we do not perceive that either the Tax Court or the Circuit Court for Baltimore City made "an erroneous conclusion of law."

wise cut up food, and c) machines that boil, fry, bake, or otherwise cook food.

■ *Macke Co. v. State Department of Assessments and Taxation*, 264 Md. 121, 285 A.2d 593 (1972) held that a vending machine that makes cold drinks and ice is not used in manufacturing. *Arnreich v. State*, 150 Md. 91, 101, 132 A. 430 (1926) stated that "the cutting up or dividing of a carcass of lamb or veal into smaller portions, which may be known as steaks or chops, is not the kind of process which is popularly known and regarded as manufacturing." *Arnreich* also declared that the cleaning and cutting up of fish was not manufacturing. Thus, case law precludes the first two categories of equipment from being classified as manufacturing equipment. What remains to be considered is the third and largest category.

When previously faced with the issue of interpreting the word "manufacturing" in other contexts, Maryland courts have investigated what the word would mean to "the average man" and then abided by the result. *See, e.g., Macke, supra,* and *State Tax Commission v. Baltimore Block & Tile Co.,* 180 Md. 620, 26 A.2d 371 (1942). In this case the Tax Court made a factual finding "that the reasonable man considers a restaurant such as Phillips to be a service business rather than a manufacturing business." This is tantamount to a finding that, under the facts of this case, the equipment in question was not used in manufacturing.

It is noteworthy that several other jurisdictions have discussed the ordinary or common meaning of "manufacturing" in relation to restaurants. *See McDonald's Corp. v. Oklahoma Tax Commission*, 563 P.2d 635, 641 (Okla.1977) (preparation of food for immediate retail sale is not manufacturing under Oklahoma statute and not "generally recognized" as such); *Coachman, Inc. v. Norberg,* 121 R.I. 316, 397 A.2d 1320, 1322 (1979) (a public restaurant "is not engaged in 'manufacturing' as that term is commonly understood"). *See also* McDonnell, *Excise Tax Act—Whether a Restaurant a Manufacturer or Producer of Goods,* 29

Can.Tax J. 192–93 (1981), which discusses *Controlled Goods Corporation, Ltd. v. The Queen,* CTC 491; 80 DTC 6373 (1980). In that case, the Canadian Tax Court decided that a restaurant is not a manufacturer, basing its conclusion on the generally accepted commercial usage of the terms "manufacture" and "production of goods."

The Supreme Court in *Anheuser-Busch Brewing Association v. United States,* 207 U.S. 556, 28 S.Ct. 204, 52 L.Ed. 336 (1908) provides insight to our problem, stating:

> Manufacture implies a change, but every change is not manufacture, and yet every change in an article is the result of treatment, labor, and manipulation. But something more is necessary.... There must be transformation; a new and different article must emerge, 'having a distinctive name, character, or use.'

*Anheuser-Busch,* 207 U.S. at 562, 28 S.Ct. at 206–07.

To cook or boil or otherwise prepare a fish or a crustacean is to change the creature, certainly, but it is far from manufacturing it. The name of the final "product", be it *crab* imperial, *lobster* tail, or stuffed *shrimp,* implies a close linkage to its original state. The character of the product—its freshness, its natural taste—enforces this linkage. Stuffings and other additives may enhance the flavor of the food, but do not change its essential character. The reason fish, crabs, and the like are delivered to Phillips is that they will be used as food, and this use remains unchanged. *See Arnreich,* 150 Md. at 101, 132 A. 430.

■ Appellant's attempt to apply this "average man" test to determine the plain meaning of "manufacturing equipment" is remarkable:

> The "average man" test cannot be applied here unless the facts are tailored to the average man.... [W]ere the average man involved in a multi-million dollar plant required to prepare hundreds of meals a day, and the manager of complex processes of sophisticated machinery as is Phillips Harborplace, he would surely consider such cooking to be manufacturing.

This is to stand words on their head. If an average man were to become the manager of Phillips Harborplace, he would no longer be an average man. Certainly, the purpose of the test is to discover what meaning an ordinary and disinterested person would attach to the term. The "average man" test cannot be used to gauge the ordinary use of a term at issue by taking a man in the street and placing him in the shoes of one of the parties to the proceeding. Appellant does not advance its case by reasoning in curlicues. We hold that it would be stretching the plain and popular meaning of the word past its breaking point if we were to say that appellant uses its kitchen equipment in the "manufacturing" of seafood. Kitchen equipment is not manufacturing equipment.

Appellant leans heavily on two Tax Court decisions, *Dunkin Donuts of Glen Burnie, Inc. v. State Department of Assessments and Taxation,* Maryland Tax Reporter (CCH) par. 200–573, at 10,249 (Md. Tax Court Feb. 4, 1969) and *The Yogurt Tree, Inc. v. State Department of Assessments and Taxation,* Md. Tax Case No. 513 A & B (1984). Phillips also believes that *Commissioners of Carroll County v. B.F. Shriver Co.,* 146 Md. 412, 126 A. 71 (1924), holding that the canning of vegetables constitutes manufacturing, helps its cause.

*Carroll County* is irrelevant to our inquiry because the canning business at issue there did not involve cooking food for retail trade. Maryland Tax Court cases, while often instructive, do not of course carry precedential weight here. In this instance they seem off the mark because the manufacturing that was deemed to have occurred in them only involved the combining of grains and dairy products into a sometimes quite different end product. They did not involve the killing, cooking or processing of fish or animal parts, the processes which are at the heart of the case *sub judice.*

Another argument that the appellant offers is that another section of Article 81, § 324(s), part of the Retail Sales

Act, treats the same kitchen equipment that is in question here as manufacturing machinery and equipment. Thus, the argument goes, it would be "highly inconsistent" if the kitchen equipment were not found to be exempt under § 9A.

This argument overlooks at least two points. First, different treatment of one item by different tax statutes does not necessarily imply an inconsistency that need be corrected by judicial harmonizing, because the legislative purpose underlying each of the statutes may be different. *See Perdue Foods,* 264 Md. at 690, 286 A.2d 165. The Court of Appeals has pointed out that the legislative policy behind § 9A(c)(1)'s "manufacturing" exemption "is to augment the wealth and prosperity of the State by inducing the establishment, expansion, and development of industries" within the State. *H.M. Rowe Co. v. Tax Commission,* 149 Md. 251, 257, 131 A. 509 (1925). That is a purpose quite different from that of those underlying the Retail Sales Tax. To grant an exemption in order to induce a manufacturer to operate in Maryland—a manufacturer who might conduct its business anywhere—serves the policy underlying § 9A(c)(1). To grant that exemption to a restaurant that must in any case operate where its patrons are to be found—here, in Baltimore—does not serve that purpose, as the Tax Court found.

Secondly, although both § 9A(c)(1) and § 324(s) serve as defining provisions, the § 324 definitions apply only to the Retail Sales Act subtitle of Article 81. Thus, by the very terms of § 324, subsection (s) has no application to § 9A. Appellant's argument based on statutory harmony is without merit.

JUDGMENT AFFIRMED.

APPELLANT TO PAY THE COSTS.