504 A.2d 666

**COMPTROLLER OF the TREASURY**

v.

**WASHINGTON NATIONAL ARENA LIMITED PARTNERSHIP et al.**

**No. 746, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Feb. 13, 1986.

Certiorari Denied May 21, 1986.

Deborah B. Bacharach and Linda Koerber Boyd, Asst. Attys. Gen. (Stephen H. Sachs, Atty. Gen., on brief), Baltimore, for appellant.

Jonathan D. Cahn and John R. Risher, Jr. (Alan S. Dubin and Arent, Fox, Kintner, Plotkin & Kahn, on brief), Washington, D.C., for appellees.

Argued before ADKINS, BLOOM and WENNER, JJ.

ADKINS, Judge.

The principle issue before this court is whether equipment and ticket stock needed in printing Capital Centre admission tickets are used in the sale or resale of tangible personal property, thus escaping taxation under the Use and Retail Sales Tax Acts.

Appellee Washington National Arena Limited Partnership (Washington), operator of the Capital Centre in Landover,

produces computerized tickets for entertainment events there and at other locations. This is done by using blank stock that Washington purchases from an out-of-state vendor and equipment that it rents from Capital Ticket Systems Limited Partnership, a Maryland firm.

This dispute centers on two portions of the assessment that appellant Comptroller of the Treasury levied on Washington for the period from May 1, 1977, through March 31, 1981: $6,265.33 on the purchases of the blank ticket stock and $15,210.00 on the rental charges for the equipment. The hearing officer for the Office of the Comptroller affirmed the assessment as well as statutory interest and penalty.

The Maryland Tax Court affirmed the assessment and interest but abated the penalty. The Tax Court reasoned that the rental by Washington of the equipment did not qualify for the Retail Sales Tax Act exemption for manufacturing machinery and equipment found at Art. 81, § 326 (mm)[1] and was not exempt under earlier sections of Article 81[2] because the equipment was not used in "manufacturing, assembling, processing or refining products for sale." *See also* Art. 81, § 324(s) (definitional provision of "manufacturing machinery and equipment")[3] and § 324(d) (definitional provision of "sale").[1]

---

1. Section 326 reads:

 The tax hereby levied does not apply to the following sales: (mm) *Manufacturing machinery.*—Sales of manufacturing machinery and equipment.

2. Section 326(mm) became effective on July 1, 1979. For prior years, special tax rates were provided by former § 325(g), applicable for transactions occurring in May of 1977, and former § 325(d), applicable for transactions between June 1, 1977, and June 30, 1979.

3. Section 324(s) reads:

 'Manufacturing machinery and equipment' means all machinery and equipment which by acceptable and consistent accounting standards is capitalized for the purpose of claiming depreciation and which is used in manufacturing, assembling, processing or refining products for sale at any stage of the operations, from the handling of raw materials or components on the manufacturing site until the prod-

---

4. See note 4 on page 420.

The Tax Court also denied Washington's claim that the purchase of the blank ticket stock was protected from a tax assessment because it was sheltered by exclusions found at § 324(f)(i) and (f)(iii).[5] The Tax Court found that the blank ticket stock constituted neither tangible personal property used for resale nor part of other tangible personal property used for sale. Rather, the Tax Court found that when sold to patrons of the Capital Centre, tickets are intangible personal property, thus not qualifying for the § 324(f)(i) and (f)(iii) exclusions. The circuit court reversed, holding that Washington's tickets are tangible personal property when bought by patrons.

Because we hold that the Tax Court's order was not erroneous as a matter of law, that substantial evidence

---

uct is ready for delivery or storage, or in the generation of electricity, or research and development.

**4.** Section 324(d) reads:
*'Sale'* and *'selling'* means any transaction whereby title or possession, or both, of tangible personal property is or is to be transferred by any means whatsoever for a consideration including rental, lease or license to use, or royalty, by a vendor to a purchaser, or any transaction whereby services subject to tax under § 324 of this subtitle are rendered for consideration to any purchaser by any vendor. Such consideration may be either in the form of a price in money, rights or property or by exchange or barter, and may be payable immediately, in the future, or by installment.

**5.** The Use Tax Act, which controlled this transaction, complements the Sales Tax Act, *see Comptroller v. Fairchild Engine and Airplane Corp.,* 227 Md. 252, 176 A.2d 210 (1961), and incorporates § 324(f)(i) and (f)(iii) by reference. *See* § 372(d)(1), (d)(3).
Sections 324(f)(i) and (f)(iii) read:
*'Retail sale'* and *'sale at retail'* means the sale in any quantity or quantities of any tangible personal property or service taxable under the terms of this subtitle. The term shall mean all sales of tangible personal property to any person for any purpose other than those in which the purpose of the purchaser is (i) to resell the property so transferred in the form in which the same is, or is to be, received by him, ... or (iii) to use or incorporate the property so transferred as a material or part of other tangible personal property to be produced for sale by manufacturing, assembling, processing or refining....

supported it, and that the circuit court judge exceeded the proper bounds of judicial review of a Tax Court decision, we shall reverse.

Md.Code Ann. art. 81, § 229(*o*) provides that a Tax Court order shall be affirmed by a reviewing court "if it is not erroneous as a matter of law and if it is supported by substantial evidence appearing in the record." When determining if Tax Court orders were based solely upon errors of law, a reviewing court used the "substitution of judgment standard"; but when looking for mistaken factual determinations, a reviewing court must use the narrower substantial evidence standard. *See Comptroller v. Shell Oil Co.,* 65 Md.App. 252, 500 A.2d 315 (1985).

The first step in our analysis is to determine whether the Tax Court was mistaken in its order as a matter of law. Neither statute nor case law persuades us that the Tax Court committed error.

■ Washington argues that two exemption provisions, § 326(p) of the Retail Sales Tax Act and § 403(a) of the Admissions and Amusement Tax Act must lead to that conclusion.[6] Washington asserts that but for these two exemptions, ticket sales to patrons would be subject to a sales tax, thus providing that tickets are tangible personal property. The State argues, however, that existence of a "but for" link is questionable, as it certainly is not present for other items listed in the § 326 exemption provision. For example, § 326(f) expressly exempts tax sales which are not

---

**6.** Section 326(p) reads:
 *Amusement tickets.*—Sales of tickets to places of amusement, so long as the gross receipts from which are taxable under §§ 402–411 of this article.
 Section 403(a) reads:
 The rate of tax imposed under § 402 shall not exceed ten percent (10%) of the gross receipts of every person, firm or corporation subject to the tax provided further that in those cases where tickets to places of amusement or gross receipts for amusements are taxed under the provisions of the Retail Sales Tax Act or the Maryland Use Tax the total combined admissions tax and sales or use tax shall not exceed ten percent (10%).

within the constitutional taxing power of Maryland. If § 326(f) were eliminated, however, such sales still would be exempt from the sales tax. Section 326(f), even if not strictly necessary, was evidently intended for clarification and emphasis. It was not error for the Tax Court to decide that the same purposes inform § 326(p) and that theories about the negative implications of § 326(p) are merely speculative.

Further, it may be argued that the phrase "sales of tickets" as used in § 326(p) does not refer literally to sales of printed cardboard strips but rather stands for the common notion of sales of permission to enter. Indeed, the phrase can be equated with "amounts charged for admissions," a concept used in § 405, § 406A, and "receipts from admissions" in § 406C. These three provisions describe exceptional circumstances in which the § 326(p) exemption would not apply. An analysis of § 403(a) yields the same result. This section imposes a 10 percent cap on the gross receipt tax "provided . . . that in those cases where tickets to places of amusement or gross receipts for amusement are taxed under the provisions of the Retail Sales Tax Act or the Maryland Use Tax the total combined admissions tax and sales or use tax shall not exceed ten percent. . . ." The phrase "those cases where tickets . . . are taxed" refers to cases that do not qualify for the § 326(p) exemption. Such cases may come under § 406, § 406A or § 406C. Thus, "those cases where tickets . . . are taxed" may refer to cases in which tickets are viewed as "amounts charged for admissions" or "receipts from admissions." Such a reading of § 326(p) and § 403(a) does not inexorably give rise to the inference that tickets are tangible personal property.

Case law also reveals no legal error on the part of the Tax Court. The major Maryland case dealing with the legal status of tickets, *Greenfeld v. Maryland Jockey Club of Baltimore*, 190 Md. 96, 57 A.2d 335 (1948) held that a ticket to a place of amusement is merely a revocable license, creating a contract but not an interest in land. Although *Greenfeld* did not preclude the possibility that tickets

should be viewed as tangible personalty, neither did *Greenfeld* insist on it.

Washington bases its argument on four other cases, but they do not persuade us that this issue has been or should be decided as a matter of law. In *Hearst Corp. v. State Department of Assessments and Taxation,* 269 Md. 625, 308 A.2d 679 (1983), the printing of a newspaper was deemed to be manufacturing but the court based its decision on the common meaning of "manufacturing" and the size and nature of the mechanical operation of appellant's plant. The issue of the relationship between a physical object (newspaper) and intangible property (information) was one not addressed by that court, yet it is the central issue before this one.

In *Macke Co. v. Comptroller,* 302 Md. 18, 485 A.2d 254 (1984), paper bowls, plates, cups and lids were determined to be resold to consumers in the same form as the food vendor had acquired them. Without them, the court held, the food and drink they contained would be relatively valueless to consumers. *Macke,* then, concerned the relationship between indisputably tangible properties, unlike the situation here.

In *Comptroller v. Equitable Trust Co.,* 296 Md. 459, 464 A.2d 248, 249 (1983), the court held that canned computer programs, tangible magnetic tapes enhanced in value by the intangible information encoded onto them, were tangible personal property. The object of the purchase of a canned program was to use information contained in an ordered sequence of magnetic impulses. As "[a] meaningful sequence of magnetic impulses cannot float in space," *Equitable,* 296 Md. at 484, 464 A.2d 248, the sequence does not become physically severed from the magnetic tape when used by the consumer. By contrast, the object of the purchase of an amusement ticket is to view an amusement. The physical act of viewing is accomplished independently from holding onto a ticket, although it is symbolized by one.

We are not persuaded that *Equitable* provides us with relevant law.

The trial court judge expressed another reason for excluding the leasing of computer equipment and the purchase of blank ticket stock from taxation: the avoidance of double taxation, a goal that is recognized in *Macke.* Yet we need not be reluctant to approve the assessment of a sales or use tax upon one taxpayer for one purpose merely because the taxable event involves items that may be central to other taxable events, other taxpayers and other purposes. We note that *Macke,* although exempting some paper items from the use tax, also upheld the Tax Court's finding that utensils, napkins and other products were subject to the use tax to be paid by appellant-vendor. This determination was made even though these products, their cost incorporated into the single price charged for food and drink, were subject to the sales tax paid by consumers. Chief Judge Murphy, in his dissent in *Macke,* quoted *Wilkens Co. v. Baltimore City,* 103 Md. 293, 312, 63 A. 562 (1906) (quoting *United States Electric Power and Light Co. v. State,* 79 Md. 63, 71–72, 28 A. 768 (1894), which spoke to the principle involved:

> [W]hen the same property represents distinct values belonging to different persons, be those persons natural or artificial, both persons may be lawfully taxed, and the amounts of their separate contributions would be fixed by the values which the same property represented in the hands of each respectively. And this would not be double taxation in the sense in which it is obnoxious to the organic law.

*Macke,* 302 Md. at 38, 485 A.2d 254 (Murphy, C.J. dissenting).

■ We are left facing, then, what essentially is a factual determination [7]: whether the purchase of an amusement

---

7. The trial court judge also raised the conceptual difficulty of viewing tangible property as having the ability to become intangible property.

ticket involves the sale of tangible personal property, as that term is used in the Sales and Use Tax Acts. Accordingly, we must invoke the substantial evidence test in making it. Maryland courts have habitually turned to this test when confronted with similar tax related issues. *See, e.g., Ramsay, Scarlett & Co. v. Comptroller,* 302 Md. 825, 490 A.2d 1296 (1985) (involving a determination of whether a corporation's division was entitled to a separate accounting under § 316(c)); *Comptroller v. Diebold, Inc.,* 279 Md. 401, 369 A.2d 77 (1977) (again involving § 316(c)); *Phillips Harborplace, Inc. v. State,* 65 Md.App. 461, 501 A.2d 92 (1985) (determining the scope of the manufacturing equipment exemption of § 9A(c)(1)); and *Pharmakinetics Laboratories, Inc. v. Comptroller,* 63 Md.App. 619, 493 A.2d 408 (1985) determining whether activities qualified as research and development under § 326, § 375 and § 324(t)).

The proper application of the substantial evidence test to an agency decision was outlined in *Comptroller v. Haskin,* 298 Md. 681, 472 A.2d 70 (1984) and repeated in *Ramsay, Scarlett.* A reviewing court should not substitute its judgment for the expertise of the administrative agency; the agency's decision must be reviewed in the light most favorable to it, and the inferences drawn by the agency from inconsistent evidence must be honored. *See Haskin,* 298 Md. at 693–94, 472 A.2d 70.

With that caution in mind, we proceed to the facts. In the hearing before the Tax Court, Washington called only one witness: Edmund Stelzer, controller of the Capital Centre. Mr. Stelzer stated that the reason the Centre

---

It is important to keep in mind that we here are talking about legal concepts of physical objects, not about the objects themselves. Objects frequently can change their legal dress. In the field of secured transactions, for example, a tape recorder can be a consumer good, inventory or equipment depending upon whether it is played in a debtor's home, offered for sale in the debtor's store, or used in the defendant's recording studio. Moreover, it is not uncommon for physical objects to be viewed in legal terms as intangibles, for example, trademarks and patents. See, Commercial Law art. § 9–106 official comment.

issues a ticket to a patron is that it "constitutes the privilege to occupy a designated seat at a specified period of time...." The Stelzer testimony said nothing about any other value a ticket might possess and offered no other reason to explain its issuance. Neither did any other evidence presented to the Tax Court. On the contrary, a facility agreement between the Baltimore Civic Center and Washington National Arena Limited Partnership defined "ticket" as being merely "printed evidence of the right to occupy space at or participate in an attraction." A plausible inference that can be drawn from all of this is that the worth of a ticket lies wholly in its symbolic value. A Capital Centre amusement ticket, then, may be viewed as intangible property. It certainly seems to fit the definition in *Black:*

> *Intangible property.* As used chiefly in the law of taxation, this term means such property as has no intrinsic and marketable value, but is merely the representative or evidence of value, such as certificates of stock, bonds, promissory notes, and franchises.

*Black's Law Dictionary* 726 (Rev. 5th ed. 1979).

The circuit court reversed the Tax Court's order primarily because it agreed with Washington's argument, raised for the first time on review, that "a ticket represents more than solely a right to enter the Capital Centre."

While no evidence on the point was presented to the Tax Court, the judge concluded that while most of what a patron buys when he purchases a ticket is a right to admission, "[s]ome portion of that price, however, is paid for the ticket itself." After all, the circuit court noted, amusement tickets belong to the patrons even after the amusement is over. "Whether they keep the ticket for a scrap book, secure an autograph from their favorite performer or athlete, redeem a coupon on the back, or simply throw it away, one thing remains clear, it is their property to do with as they please."

■ This conclusion, however, ignores the stricture stated above that when substantial evidence is the test, a review-

ing judge must stick to the record and may not indulge himself in any factfinding adventures. *See Baltimore Lutheran High School Association, Inc. v. Employment Security Administration,* 302 Md. 649, 490 A.2d 701 (1985). The need for a judge to contain himself seems particularly acute here. Other unbriefed factors, such as the presentation or surrender of tickets by patrons upon their entry to the Capital Centre or the possible use of shredded halves of tickets by the Capital Centre for the identification of ticket holders and recordkeeping, would likely affect the possession analysis.

 Moreover, even assuming that the sale of tickets was a sale of tangible personal property, the exclusion provision of either § 324(f)(i) or § 324(f)(iii) must be satisfied. For § 324(f)(i) to be met, Washington must show that it transferred the property (tickets) in the same form in which it received it (blank stock).

Washington contends that common sense and *Webster's Third Dictionary* dictate that the tickets in their printed version maintain the form they had when they were unprinted ticket stock.

But contrary to Washington's common sense, "form" can mean "the external appearance of a clearly defined area, as distinguished from color or material," (*Random House Dictionary of the English Language,* 557 (1966)). Even Washington would have to concede that the appearance of printed tickets are markedly different from unmarked stock. They would also have to concede that the *final* form that tickets of most patrons take, after ticket-takers at the Capital Centre have ripped them in two, is quite different from unblemished printed stock. In short, there is no insurmountable difficulty in concluding that § 324(f)(i) is inappropriate to this case.

Section 324(f)(iii) is inappropriate as well. Washington gets into difficulty when it argues that, although it changes neither the shape nor structure of ticket stock for purposes of satisfying § 324(f)(i), it somehow manages to manufac-

ture tickets to satisfy § 324(f)(iii). Section 324(f)(iii) may be met by using or incorporating the property in question as "a material or part of other tangible personal property to be produced for sale by manufacturing...." Washington does not say what the "other tangible personal property" is. Following its reasoning, we conclude only that their ticket stock is combined with the intangible property right of admission in its "manufacturing" process. We do not believe that this satisfies § 324(f)(iii).

In sum, substantial evidence exists to support the Tax Court view that tickets are to be viewed as merely physical symbols of an abstract right, much like stock certificates, as appellant suggests; and that they are given to purchasers upon payment for permission to enter the Capital Centre. It follows that leasing of the computer and ticket equipment is not exempt as manufacturing machinery and equipment and is subject to sales tax; and that the purchase of the blank ticket stock is not excluded, as purchase for resale, from the use tax.

JUDGMENT REVERSED.

COSTS TO BE PAID BY APPELLEES.