520 A.2d 1119

**Earl H. PINDER, Clerk of the Circuit Court for Kent County, Maryland**

v.

**George W. DEAN, et al.**

**No. 727, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

Feb. 9, 1987.

Certiorari Granted June 9, 1987.

Catherine M. Shultz, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on the brief), Baltimore, for appellant.

Philip W. Hoon (Hoon & Barroll, on the brief), Chestertown, for appellees.

Argued before WILNER, ALPERT and POLLITT, JJ.

ALPERT, Judge.

This "transfer tax"[1] case raises the question of the difference, if any, between the terms "consideration" and "actual consideration."

The facts are undisputed. George and Jane Dean (the Deans), appellees, purchased two parcels of property. The first was purchased on January 2, 1984, at $130,000. This

---

**1.** The "transfer tax" statute which spawned this litigation imposed a recording tax of .5% of the "actual consideration" paid or to be paid for the conveyance of real estate.

parcel is known as the Buck Bacchus House. The second parcel, known as the Imperial Hotel, was purchased on April 15, 1984, for $175,000. Both parcels were held as tenants by the entirety.

On May 4, 1984, the Deans created a Maryland corporation which they called the Imperial Hotel, Inc. The following month, the Deans caused the corporation to issue 50 shares of stock, 25 shares to each of them. It does not appear that they paid anything to the corporation for that stock, and, as the corporation had no assets at the time, the stock had no real value.

Two days after acquiring the stock, the Board of Directors resolved that the corporation would borrow up to $1,375,000 to purchase and to develop the Imperial Hotel. Both the Imperial Hotel and the Bacchus House were transferred from the Deans to the corporation by a single deed dated September 14, 1984. No cash payment was made to the Deans at that time, nor was any additional stock issued to them. Each continued to own a 50% interest in the corporation.

The Deans offered the deed to appellant, Earl H. Pinder, Clerk of the Circuit Court for Kent County, for recording. The deed recited that the Deans conveyed the property to the corporation for "$1 and other good and valuable consideration." The affidavit of consideration appended to the deed stated that "there is no consideration paid or to be paid for the foregoing conveyance." Based on both prior and contemporaneous advice of the Office of the Attorney General, the Clerk refused to accept the deed without payment of tax assessed on the fair market value of the property conveyed. Accordingly, the Deans revised their affidavit of consideration so that it read, "the consideration paid or to be paid for the foregoing conveyance is Three Hundred and Five Thousand Dollars ($305,000)." The Deans arrived at that figure by adding together the sums they had previously paid to acquire the two properties.

The Clerk accepted the deed with the revised affidavit and assessed $4,056.50 in State and County transfer and recording taxes against the Deans. This assessment was based on the figure included in the revised affidavit of consideration. The Deans paid the assessment under protest and the Clerk recorded their deed.

Thereafter, the Deans filed a claim for refund of those taxes. Their claim was denied by the Clerk of the Circuit Court for Kent County.

On March 29, 1985, the Deans appealed that decision to the Maryland Tax Court, which denied the Deans' appeal and affirmed the Clerk's decision. The Deans then appealed the Tax Court decision to the Circuit Court for Kent County. In an articulate memorandum opinion and order dated May 23, 1986, the trial judge reversed the Maryland Tax Court and ordered the Clerk to refund the taxes. From this Order, the Clerk filed a timely appeal and raises the following questions:

I. Did the Circuit Court apply an erroneous standard of review by substituting its judgment for that of the Tax Court on the factual question of whether there was consideration for the conveyance of real property from the Deans to Imperial Hotel, Inc.?

II. Even if the Court did not apply the wrong standard of judicial review, did the Circuit Court err in concluding that there was no consideration for the transfer of real property from the Deans to Imperial Hotel, Inc.?

Since these two issues are interrelated, we will discuss them together and as our response to the second question is in the affirmative, we reverse.

Article 81, section 229(*o*) of the Maryland Annotated Code sets out the standard for reviewing the findings of the Maryland Tax Court:

*Decision of circuit court.*—In any case, the circuit court for the county shall determine the matter upon the record made in the Maryland Tax Court. The circuit

court shall affirm the Tax Court order if it is not erroneous as a matter of law and if it is supported by substantial evidence appearing in the record. In other cases, the circuit court may affirm, reverse, remand, or modify the order appealed from.

Md.Ann.Code art. 81, § 229(*o*) (1980).

In *Comptroller of the Treasury v. World Book Childcraft International, Inc.*, 67 Md.App. 424, 508 A.2d 148 (1986), we outlined a three-step analysis necessary for the reviewing court to determine the correct standard of review.

1. First, the reviewing court must determine whether the agency recognized and applied the correct principles of law governing the case. The reviewing court is not constrained to affirm the agency where its order "is premised solely upon an erroneous conclusion of law."

2. Once it is determined that the agency did not err in its determination or interpretation of the applicable law, the reviewing court next examines the agency's factual findings to determine if they are supported by substantial evidence, *i.e.*, by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* At this juncture, the *Ramsay, Scarlett* court reminds us that "it is the agency's province to resolve conflicting evidence, and, where inconsistent inferences can be drawn from the same evidence, it is for the agency to draw the inference."

3. Finally, the reviewing court must examine how the agency applied the law to the facts. This, of course, is a judgmental process involving a mixed question of law and fact, and great deference must be accorded to the agency. The test of appellate review of this function is "whether, ... a reasoning mind could reasonably have reached the conclusion reached by the [agency], consistent with a proper application of the [controlling legal principles]".

*Id.* at 438–39, 508 A.2d 148; *Matthew Bender & Company v. Comptroller of the Treasury,* 67 Md.App. 693, 703–12,

509 A.2d 702 (1986). In *United Parcel Service v. Comptroller of the Treasury*, 69 Md.App. 458, 465, 518 A.2d 164 (1986), we explained that "implicit in this methodology is the requirement that the reviewing court must distinguish among the Tax Court's factual findings, legal conclusions, and applications of fact to law."

In the case *sub judice*, appellant contends that the Tax Court was called to act only as a factfinder and that the Circuit Court was then required to determine whether "the tax court [could] reasonably find the facts as it did." Appellant states that the Circuit Court recognized this standard, but failed to apply it properly. Appellant concludes that the "circuit court cavalierly discounted the Tax Court's finding."

■ Appellant has improperly described the tasks of the lower courts. To begin with, there was never any factual dispute in this case. To the contrary, at each stage of the controversy the parties submitted an agreed statement of fact from which there were no conflicting inferences to be drawn. *See Supervisor of Assessments of Montgomery County v. Group Health Association, Inc.*, 308 Md. 151, 517 A.2d 1076 (1986). Thus, appellant's characterization of the Tax Court as a mere factfinder is incorrect. Indeed, the parties agreed that the only conclusions which were to be reviewed by that court were legal conclusions and mixed conclusions of law and fact. Clearly then, the Tax Court was called to apply the law to the undisputed facts.

We must now examine how the Tax Court applied the law to those facts. This judgmental process involves a mixed question of law and fact and great deference must be accorded to the Tax Court. *See Matthew Bender, supra*, 67 Md.App. at 706, 509 A.2d 702. Since the test is "whether ... a reasoning mind could reasonably have reached the conclusion reached by the [agency], consistent with a proper application of the [controlling legal principles]", it is our

task to evaluate the legal analyses of the Tax and Circuit Courts to determine whether either is incorrect.

Both the Tax Court and the Circuit Court identified Article 81, Sections 277 and 278A as controlling. These sections impose a recording tax, Md.Ann.Code art. 88, § 277(a) (1980), fix the amount of the tax at ".5 percent of the actual consideration paid or to be paid for the conveyances of title," Md.Ann.Code art. 88, § 278A(b)(1) (1980), and describe the instruments which must be filed before they will be accepted for recording. Md.Ann.Code art. 81, § 278A(b)(3) (1980).[2] Further, both courts considered the import of *Pritchett v. Kidwell*, 55 Md.App. 206, 461 A.2d 57 (1983) (interpreting Article 81, sections 277 and 278A) on the issues before them. Nevertheless, after applying the same legal principles to an agreed upon set of facts, the two courts reached diametrically opposite results.

The Tax Court held that "actual consideration" was paid by the corporation to the Deans because the value of the stock they held increased after the transfer was effectuated. The consideration, in the Tax Court's view, was the economic benefit which flowed to the Deans as a result of the transfer. The Tax Court explained:

We disagree with the Petitioners in this case. Petitioner does argue that no consideration has been paid, but under *Pritchett versus Kidwell, 55 Md. Court of Special Appeals 206*, it's very clear that actual consideration was paid because there has been some economic benefit which has flowed to the taxpayers.

The economic fact is that the value of the stock increased by the fair market value of the land.

---

**2.** Section 278A(b)(3) states that:

A statement of the amount of the actual consideration paid or to be paid ... shall either be included ... as part of [the instrument of conveyance's] recitals or as part of the acknowledgment, or be contained in a separate affidavit accompanying the instrument, signed under the penalties of perjury.

We see no distinction between issuing new stock, where the stock was wholly owned by the grantor of the real estate. And we think it's unrealistic to make a distinction because it would allow the individuals to convey property to corporations of which they are stockholders and avoid taxation by not issuing stock in return for the transfer of the property.

In addition, the Deans also received the privilege of using the land records for transferring the real estate to the corporation, a separate and distinct agency.

This is a taxable event, and we're going to treat it as a taxable event.

The Circuit Court reversed the decision of the Tax Court because, *inter alia*, it interpreted the *Pritchett* case differently. The Circuit Court reasoned:

In *Pritchett v. Kidwell*, 55 Md.App. 206, [461 A.2d 57], the Court of Special Appeals reversed both the Tax Court and Circuit Court, which had concluded that an indemnity agreement had no value. The appellate Court determined it "must give regard to the reasonable expectations of the parties: tax avoidance ploys aside, what did they consider the bargain to be?" They then looked at the indemnity agreement and found both a benefit and detriment and therefore consideration.

.    .    .    .    .

A significant difference between this case and *Pritchett* is the absence of any agreement between the parties which could be construed as consideration. In *Pritchett,* there was a written indemnity agreement as to which the Court asked: "What did the parties consider the bargain to be?" There the Court was interpreting or identifying the nature of the bargain or transaction with regard to an instrument or agreement *of the parties.* In the instant case, no such instrument or agreement between the parties appears as a yardstick. Here Appellee selected the yardstick (fair market value) for the parties, and directed

they use his yardstick, much in the nature of an implied in law contract.

If the rhetorical question in *Pritchett* is posed here, a reasonable response, based on the evidence, is: "a gift for purposes of business convenience". This is what the parties initially declared the deed to be, but Appellee did not accept their declaration. While Appellee may not have believed Appellant's declaration, he may not arbitrarily cast such declarations aside and impute a bargain to the parties for purposes of taxation. There is no evidence the parties here did, said, or signed, anything contrary to their declared intent. Appellee's extrapolation of consideration is not the same as actual consideration.

The word "actual" is an adjective and as such modifies or gives emphasis to one or more nouns. Some synonyms are: "real", "true", "existing at the present moment", or "in fact". (Webster's New World Dictionary, College Edition).

In giving effect to the word "actual", it is clear the word is designed to relate to or in some way modify the ensuing word "consideration". To contend that the word "actual" is equivalent of the word "consideration" is etymologically incorrect and ignores the basic principle of statutory interpretation that effect must be given to every word of a statute, if reasonably possible. The Court in *Pritchett* did not regard the words as synonomous and applied both to the transaction in question.

. . . . .

If the enhanced value of the corporation's stock due to the transfer creates taxable consideration, there would seem to be no need for the Legislature to have added the word "actual". To interpret the statute as implying taxable consideration in every recorded deed, regardless of representations to the contrary, would negate any interpretation or definition of the word "actual". If the consideration here was "actual" Appellee would not have

had to go to an extraneous source (assessment records) to compute the tax.

.    .    .    .    .

Applying these principles and precedents to the present statute, the Legislative use of the word "actual" before "consideration" limits the tax to those transactions wherein identifiable consideration is in fact present at the time of transfer, and excludes those transactions where any consideration is implied, constructive, imputed, indirect or merely possible.

In this case, the Clerk has supplied the consideration paid or to be paid, and not the parties. The Legislature has not given him such power. If Appellee apprehends a transferor has misrepresented the amount of consideration, or fails to pay it when due, procedures are available to pursue such tax scofflaws (Article 81, Section 278—now codified as Tax Property Section 14–1010 thru 14–1012).

The Tax Court may have been reasonably justified in concluding from the evidence that the value of the corporation's assets was enhanced by the acquisition of the real estate. It was incorrect in concluding that this enhancement constituted "actual consideration paid or to be paid for the conveyance of title".

We agree with the reasoning of the Tax Court. In applying these tax statutes, courts at every level must effectuate the intent of the Legislature. *Peppin v. Woodside Delicatessen*, 67 Md.App. 39, 47, 506 A.2d 263 (1986). In doing so, we shall place the disputed statutory language under a judicial microscope.

■ As constituted on the date of the Imperial Hotel, Inc. transfer, § 278A(a)(3) required that the transfer tax be assessed on the "actual consideration" the parties contemplated would pass from grantee to grantor: in this case

from the corporation to the Deans. Under the Circuit Court's view, nothing passed to the Deans—the transfer was a gift. The term "consideration" has been defined as "the inducement to a contract ... [s]ome right, interest, profit or *benefit* accruing to one party." *Black's Law Dictionary*, 5th ed. p. 277. While we believe that the legislature never intended[3] to change the meaning of the term "consideration" by placing the word "actual" before it, we shall nevertheless examine the definition of the word "actual":

> Real; substantial; existing presently in fact; having a valid objective existence as opposed to that which is merely theoretical or possible. Opposed to potential, possible, virtual, theoretical, hypothetical, or nominal. Something real, in opposition to constructive or speculative; something existing in fact. It is used as a legal term in contradistinction to virtual or constructive as of possession or occupation. *Actually* is opposed to seemingly, pretendedly, or feignedly, as *actually engaged in farming* means really, truly in fact. As to actual Bias; Damages; Delivery; Fraud; Malice; Notice; Occupations; Ouster; Possession; Residence; Seisin; Total loss, see those titles.

*Black's Law Dictionary* 33 (5th ed. 1979).

■ With this definition in mind, we must determine whether anything "real" or "substantial," moved from the corporation to the Deans, inducing them to convey the real

---

**3.** The statute was amended in 1986 to read:
> The rate of the transfer tax is 0.5% of the consideration payable for the instrument of writing.

Md. Tax-Property Article Ann. § 13–203. The revisor opined that there was no substantive change, ergo, the word "actual" as placed before the word "consideration" was intended to add nothing; it was redundant. The revisor's construction is a factor to be reckoned with in gleaning legislative intent. *See Allers v. Tittsworth,* 269 Md. 677, 683, 309 A.2d 476 (1973); *Murray v. State,* 27 Md.App. 404, 409, 340 A.2d 402 (1975).

estate to the corporation. Was there any "real" or "substantial" benefit accruing to the Deans? Indeed there was.

While the Circuit Court gave no particular weight to *Pritchett v. Kidwell, supra,* we believe that case controls. The principle of "economic fact" emerged loud and clear from that case. *See* 55 Md.App. at 212–213, 461 A.2d 57. What did the parties to the transfer *sub judice* "consider the bargain to be"? As the Tax Court put it: "The economic fact is that the value of the stock increased by the fair market value of the land." Before the transfer, the Imperial Hotel stock had no value. Once the corporation owned the land, the value of the stock increased dramatically. Thus, as a result of that "economic fact," a real and substantial benefit accrued to the Deans. Accordingly, because the "actual consideration" was equivalent to the enhanced value of the stock, the transfer tax was properly based thereon. To hold otherwise would be to recognize a distinction between the transaction *sub judice* and one where new stock of a corporation is issued in exchange for the transfer of real property to that corporation even though the economic consequences are precisely the same. Imposition of transfer taxes on the latter type transaction has long been the practice. *See* 32 Op.A.G. 394 (1947). As did the Tax Court,

> we think it's unrealistic to make a distinction because it would allow the individuals to convey property to corporations of which they are stockholders and avoid taxation by not issuing stock in return for the transfer of the property.

Accordingly, we hold that the Tax Court properly applied the controlling legal principles as explicated in *Pritchett* to the undisputed facts of this case.

JUDGMENT REVERSED: CASE REMANDED TO THE CIRCUIT COURT FOR KENT COUNTY WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT OF THE TAX COURT; COSTS TO BE PAID BY THE APPELLEES.