530 A.2d 8

**DISCLOSURE INFORMATION GROUP, et al.**

v.

**COMPTROLLER OF THE TREASURY.**

No. 1486, Sept. Term, 1986.

Court of Special Appeals of Maryland.

Sept. 3, 1987.

Alan S. Kaden (Fried, Frank, Harris, Shriver & Jacobson, Washington, D.C., Daniel R. Kimball and Lerch, Early, Roseman & Frankel, Bethesda, on brief), for appellants.

Deborah B. Bacharach, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Linda Koerber Boyd and Gaylin Soponis, Asst. Attys. Gen., on brief), Baltimore, for appellee.

Argued before ALPERT, KARWACKI and POLLITT, JJ.

KARWACKI, Judge.

Between 1980 and 1983, appellants Disclosure, Inc. (DI) and National Standards Association (NSA), and Disclosure Partners (DP), the predecessor to appellant Disclosure Information Group, purchased all or substantially all of the assets of four businesses. The Retail Sales Tax Division of the Comptroller of the Treasury levied sales tax assess-

ments against the appellants in connection with those transactions as follows:

DP: $26,119.98 in tax plus interest and penalty for the period April 20, 1982 through September 14, 1983;

DI: $22,803.79 in tax plus interest and penalty for the period January 1, 1980 through December 31, 1983;

NSA: $109,393.59 in tax plus interest and penalty for the period January 1, 1980 through December 31, 1983.

The appellants requested a hearing on the assessments. In an opinion dated January 7, 1985, a hearing officer for the Retail Sales Tax Division affirmed the major portion of each assessment, and the appellants sought review of that decision by the Maryland Tax Court.

A hearing was held before the Tax Court on August 29, 1985. At that hearing the appellants contested the assessment of a sales tax on their purchases of "subscription lists," containing names, addresses and other customer information, which had been the primary asset of each of the businesses purchased. On March 26, 1986, the Tax Court issued an Order and Memorandum of Grounds for Decision affirming the assessments levied by the Comptroller. It determined that the subscription lists at issue were tangible personal property subject to sales tax under the Maryland Retail Sales Tax Act, Md. Code (1980 Repl. Vol., 1986 Supp.), Art. 81, §§ 324 through 371,[1] rejecting the appellants' argument that the intangible information contained in the transferred materials was the actual subject of the sales.

The appellants subsequently appealed to the Circuit Court for Montgomery County. In an oral opinion issued from the bench at a hearing on October 3, 1986, Judge Richard B. Latham affirmed the Tax Court's decision. Still refusing to accept defeat, the appellants have pursued the matter to this Court, where they present the following issues:

---

1. All further statutory references are to this Article of the Code unless otherwise indicated.

1. Did the Circuit Court for Montgomery County err in applying a standard of review appropriate to factual determinations to the purely legal determination of the Maryland Tax Court?

2. Whether the intangible element (*i.e.*, the names and addresses) of the purchased subscription lists is severed from the tangible carrier (*e.g.*, the paper on which the names are typed) when used by the Appellants, thus exempting the acquisitions of these lists from sales tax?

As these two issues are interrelated, we shall discuss them together.

The standard to be applied by a circuit court in reviewing a decision of the Maryland Tax Court is set forth in § 229(*o*):

> *Decision of circuit court.*—In any case, the circuit court for the county shall determine the matter upon the record made in the Maryland Tax Court. The circuit court shall affirm the Tax Court order if it is not erroneous as a matter of law and if it is supported by substantial evidence appearing in the record. In other cases, the circuit court may affirm, reverse, remand, or modify the order appealed from.

Relying on principles enunciated in *Ramsay, Scarlett & Co. v. Comptroller*, 302 Md. 825, 490 A.2d 1296 (1985), we recently outlined a three-step analysis for applying this standard of review:

1. First, the reviewing court must determine whether the agency recognized and applied the correct principles of law governing the case. The reviewing court is not constrained to affirm the agency where its order "is premised solely upon an erroneous conclusion of law." 302 Md. at 834, 490 A.2d 1296.

2. Once it is determined that the agency did not err in its determination or interpretation of the applicable law, the reviewing court next examines the agency's factual findings to determine if they are supported by

substantial evidence, *i.e.*, by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* At this juncture, the *Ramsay, Scarlett* court reminds us that "It is the agency's province to resolve conflicting evidence, and, where inconsistent inferences can be drawn from the same evidence, it is for the agency to draw the inference." *Id.* at 835, 490 A.2d 1296.

3. Finally, the reviewing court must examine how the agency applied the law to the facts. This, of course, is a judgmental process involving a mixed question of law and fact, and great deference must be accorded to the agency. The test of appellate review of this function is "whether, ... a reasoning mind could reasonably have reached the conclusion reached by the [agency], consistent with a proper application of the [controlling legal principles]." *Id.* at 838, 490 A.2d 1296.

*Comptroller v. World Book Childcraft International, Inc.,* 67 Md.App. 424, 438–39, 508 A.2d 148, *cert. denied,* 307 Md. 260, 513 A.2d 314 (1986), *applied in Pinder v. Dean,* 70 Md.App. 252, 520 A.2d 1119, *cert. granted,* 309 Md. 706, 526 A.2d 610 (1987); *United Parcel Service v. Comptroller,* 69 Md.App. 458, 518 A.2d 164 (1986); *Matthew Bender & Co. v. Comptroller,* 67 Md.App. 693, 509 A.2d 702 (1986).

The appellants contend that the circuit court failed to distinguish between the Tax Court's factual findings and its legal conclusions and that its failure to make this distinction resulted in an overly deferential review of the Tax Court's decision. The appellants, however, improperly characterize the Tax Court's decision in this case as purely a legal conclusion, when that decision actually involved a mixed question of law and fact. *See Comptroller v. World Book Childcraft International, Inc., supra,* 67 Md.App. at 440, 508 A.2d 148 ("most decisions of an agency represent neither a singularly factual or legal determination; rather, they involve an application of the law to the facts ...").

Thus, assuming that the Tax Court "recognized and applied the correct principles of law governing the case" and that its factual findings were "supported by substantial evidence," its decision applying the law to the facts should be accorded great deference.

At the outset, we note that there was no factual dispute in this case. The only issue to be resolved by the Tax Court was whether the appellants' acquisitions of subscription lists constituted purchases of "tangible personal property" within the meaning of § 324(e), which defines that term as "corporeal personal property of any nature." Prior to the hearing before the Tax Court, the parties jointly prepared and submitted a stipulation containing the pertinent facts. They agreed that a "subscription list" is "a list of a company's customers that subscribe to a particular product. The list generally includes each subscription customer's name, address, the product it subscribes to, and also may include billing information." Given the agreed statement of facts presented to the Tax Court, from which there were no conflicting inferences to be drawn, the only conclusions to be reviewed by the circuit court were the Tax Court's legal conclusions and mixed conclusions of law and fact. *See Pinder v. Dean, supra,* 70 Md.App. at 257, 520 A.2d 1119.

The principles governing this case are found in the case law interpreting § 324(e). Of particular significance are *Comptroller v. Equitable Trust Co.,* 296 Md. 459, 464 A.2d 248 (1983), and *Comptroller v. Washington Nat'l Arena Limited Partnership,* 66 Md.App. 416, 504 A.2d 666, *cert. denied,* 306 Md. 289, 508 A.2d 489 (1986). In *Equitable Trust* the Court of Appeals held that a copy of a computer program contained on a magnetic tape was tangible personal property subject to sales tax under the Retail Sales Tax Act. In *Washington Nat'l Arena* we found "substantial evidence" to support the Tax Court's view that the purchase of a ticket to an entertainment or sports event does not involve a sale of tangible personal property because such tickets are merely physical symbols of an abstract right. Judge Adkins, speaking for this Court, stated:

In *Comptroller v. Equitable Trust Co.*, 296 Md. 459, 464 A.2d 248, 249 (1983), the court held that canned computer programs, tangible magnetic tapes enhanced in value by the intangible information encoded onto them, were tangible personal property. The object of the purchase of a canned program was to use information contained in an ordered sequence of magnetic impulses. As "[a] meaningful sequence of magnetic impulses cannot float in space," *Equitable*, 296 Md. at 484, 464 A.2d 248, the sequence does not become physically severed from the magnetic tape when used by the consumer. By contrast, the object of the purchase of an amusement ticket is to view an amusement. The physical act of viewing is accomplished independently from holding onto a ticket, although it is symbolized by one. We are not persuaded that *Equitable* provides us with relevant law. 66 Md.App. at 423–24, 504 A.2d 666.

The Tax Court in the case *sub judice* relied on *Equitable Trust* in rejecting the appellants' argument that the transfers at issue involved intangible information rather than tangible personal property. Because we decided *Washington Nat'l Arena* after the hearing before the Tax Court, it could not have been cited by the parties at that stage in the proceedings. Moreover, although the Tax Court's order was issued one month after our decision, no mention is made of it in that agency's Memorandum of Grounds for Decision. Therefore, we assume that the Tax Court did not consider *Washington Nat'l Arena* in rendering its decision.

This does not mean, however, that the Tax Court applied incorrect principles of law. It simply means that the circuit court and this Court, as reviewing courts, have the benefit of a more recent decision that may have some bearing on the issue in the instant case. The circuit court considered *Washington Nat'l Arena* and concluded that *Comptroller v. Equitable Trust Co., supra*, remained the controlling case. We shall consider the correctness of that conclusion as we proceed to review the application of the law to the facts in this case.

In applying the law to the facts, both the Tax Court and the circuit court found the subscription lists in the case *sub judice* analogous to the computer software in *Equitable Trust.* As mentioned, the Court of Appeals held in *Equitable Trust* that a canned computer program contained on a magnetic tape was tangible personal property subject to sales tax. The Court considered the argument that the sale of each program copy should be viewed as operating on two levels, one involving the transfer of intangible knowledge or information, the other involving the delivery of a tangible tape. According to that argument, the program copy contained on the magnetic tape should be conceptually severed from the tangible tape itself, so that the program would not be taxable as tangible personal property. In rejecting that argument, the Court explained:

> We have no doubt that the dominant purpose of the subject transactions was to obtain a copy of the programs. But there are problems in adopting a dominant purpose test in order conceptually to sever information or data from the physical medium employed to deliver a copy of the information, and next to declare that the information predominates, so as thereby to classify the transaction as a sale of intangible property.

*Comptroller v. Equitable Trust Co., supra,* 296 Md. at 470, 464 A.2d 248. The Court mentioned two specific problems, the first being that "the conceptual severing of the insignificant blank tape from the valuable program copy" ran contrary to the legislative policy embraced in the definition of "price" in § 324(i), which prohibits deduction of various costs in establishing the price of a product offered for retail sale. *Id.* The second concern raised by the Court was the precedent established for comparable transactions involving "books, motion picture films, video display discs, phonorecords and music tapes," all of which are information conveying media that are treated as tangible personal property for sales tax purposes. *Id.* at 470–71, 464 A.2d 248.

Like the computer programs in *Equitable Trust,* the subscription lists in this case were transferred via physical

media (either paper or magnetic tape) which, without the information contained thereon, would have been of no value to the purchasers. The appellants were paying for the names and other customer information contained on the subscription lists, just as the computer programs were the subject of the purchases in *Equitable Trust*. Clearly, a reasoning mind could reasonably have reached the conclusion reached by the Tax Court, that the subscription lists were tangible personal property, consistent with a proper application of the legal principles set forth in *Equitable Trust*. The only remaining question is whether *Comptroller v. Washington Nat'l Arena Limited Partnership, supra,* somehow modified the legal principles to be applied so as to require a contrary conclusion.

We are unpersuaded that *Washington Nat'l Arena* provides support for the appellants' position. In *Washington Nat'l Arena* we determined that the purchase of blank ticket stock was excluded from sales tax as a purchase for resale because the sale of a ticket to an entertainment event was not a sale of tangible personal property. Applying the "substantial evidence" test, we found that a plausible inference could be drawn from the evidence before the Tax Court that "the worth of a ticket lies wholly in its symbolic value." *Comptroller v. Washington Nat'l Arena Limited Partnership, supra,* 66 Md.App. at 426, 504 A.2d 666. One purchases such a ticket as a license to view some event as a spectator, not for the information printed on the ticket. Thus, the analogy between such tickets and the subscription lists in this case fails, as there is nothing symbolic or representative about a subscription list. On the other hand, the analogy between a subscription list and a computer program tape is strong. The names and addresses on the subscription lists make those lists valuable, just as the computer programs contained on the magnetic tapes in *Equitable Trust* made those tapes valuable.

The appellants assert that *Washington Nat'l Arena* stands for the proposition that "the relevant inquiry in determining whether property is tangible or intangible for

sales tax purposes is *whether the intangible element is severed from the tangible element when used by the purchaser."* (Emphasis in Appellants' Brief). This test represents a misstatement of our position in *Washington Nat'l Arena.* Indeed, such a test would seem to run contrary to the holding of the Court of Appeals in *Equitable Trust.* Therefore, it is immaterial whether the intangible information contained on the subscription lists is severed from the tangible carrier when used by the appellants.

We also reject any suggestion that the subscription lists are non-taxable because the intangible information contained thereon might have been transferred by some other means, such as by transmitting the names over the telephone. The Court of Appeals specifically rejected the "alternative methods approach" in *Equitable Trust,* observing that such an approach "does not determine taxability on the basis of a transaction's actual facts." *Comptroller v. Equitable Trust Co., supra,* 296 Md. at 473, 464 A.2d 248.

The appellants rely on several out-of-state cases holding that mailing lists are not tangible personal property for purposes of sales or use taxation. Those decisions, however, rely on reasoning that runs contrary to the decision of our Court of Appeals in *Comptroller v. Equitable Trust Co., supra. E.g., Fingerhut Products Co. v. Commissioner of Revenue,* 258 N.W.2d 606, 610 (Minn.1977) ("use of the tangible medium of typed mailing lists is merely incidental to the use of the incorporeal information contained in those lists"); *Spencer Gifts, Inc. v. Director, Division of Taxation,* 182 N.J.Super. 179, 3 N.J.Tax 482, 440 A.2d 104, 118 (N.J. Tax Ct.1981) (magnetic tapes used to transmit mailing lists are "an inconsequential part of the transaction whose real object is the obtaining of mailing list information"). Similarly, the federal Department of the Treasury regulation on which the appellants rely has no bearing on this case. Under § 38 of the Internal Revenue Code of 1954, 26 U.S.C. § 38 (1982) (repealed by the Tax Reform Act of 1984), Congress allowed a tax credit for investment in

certain depreciable property. The Internal Revenue Service promulgated a regulation, Treas.Reg. § 1.48–1(f), providing that "[i]ntangible personal property, such as patents, copyrights, and *subscription lists,* does not qualify" for the credit. That regulation, however, has no applicability beyond the section of the Internal Revenue Code which it interpreted. It in no way governs the determination under state law as to what constitutes tangible personal property for purposes of assessing sales tax.

In summary, we hold that the Tax Court applied the correct principles of law to the undisputed facts of this case in determining that the subscription lists purchased by the appellants were tangible personal property subject to sales tax. As a reasoning mind could reasonably have reached that conclusion, consistent with a proper application of the controlling legal principles, the circuit court properly affirmed the Tax Court's decision.

JUDGMENTS AFFIRMED;
COSTS TO BE PAID BY THE APPELLANTS.